MICHAEL A. ALFRED, ESQ., SBN#113716
7220 Trade Street, Suite 104
San Diego, CA 92121
TEL. NO. (858) 566-6800

IN PRO PER

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: MICHAEL ANTHONY ALFRED, aka LAW OFFICE OF MICHAEL A. ALFRED, aka THE ALFRED GROUP<br><br>                        Debtor<br><br>LISA FEINGOLD,<br><br>   Judgement Creditor/Adversary Plaintiff,<br><br>v.<br><br>MICHAEL ANTHONY ALFRED,<br><br>   Judgement Debtor/ Adversary Defendant. | **BANKRUPTCY NO:18-90045-LA7**<br><br>**CHAPTER 7**<br><br>**DEBTOR'S OPPOSITION TO COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT** |

      **COMES NOW, Judgment Debtor/ Adversary Defendant** Michael Anthony Alfred, aka Law Office of Michael A. Alfred, aka The Alfred Group, hereby opposes Lisa Feingold's Complaint to Determine Dischargeability of Debt.

///

///

///

///

///

DEBTOR'S OPPOSITION TO LISA FEINGOLD'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT  1

Respectfully Submitted.

May 2, 2018

                                           _____/s/ MICHAEL A. ALFRED_____

                                               MICHAEL A. ALFRED, Esq.

## I. FACTUAL BACKGROUND IN SUPPORT OF OPPOSITION

On March 11, 2013, the ZOE 8188, LP LIMITED PARTNERSHIP AGREEMENT was formed. Lisa Feingold and Michael A. Alfred were identified as General Partners. Page 23 of the that partnership agreement provides that: "General Partner" means Lisa J. Feingold and Michael A. Alfred as successor in interest to any General Partner(s) Interest pursuant to this agreement.

The partnership agreement at Section 4 – Partnership Management at subparagraph (m) provides: "To borrow money or obtain Financing from any lending institution or other persons including any one or more of the Partners and, if security is required there for, to mortgage or otherwise encumber any part or all of the Properties in carrying on the normal, day-to-day business of the Partnership, and including borrowing to pay amounts due to Partners, and to prepay, in whole or in part, increase, modify, consolidate, or enter any note, loan, mortgage or other security instrument, all on such terms as the General Partner(s) deems to be in the best interest of the Partnership, subject to any applicable restrictions imposed by any agreement to which the Partnership is subject.."

Paragraph 10 of the Feingold Complaint provides, "Feingold retained Alfred for the purpose of estate and tax planning." Paragraph 11 of the Feingold Complaint provides, "As part of the retention, Alfred created a Limited Partnership by which he was supposed to manage the assets of Feingold and minimize her tax liability." Feingold's own assertions are that she hired Alfred to manage her assets. So, there was no guilty intent established to rise to the level of fraud in fact.

Alfred acted in his lawful capacity as General Manager when he advised Feingold to invest her money with a financial advisor and/or that Feingold loan her money at a fixed rate of interest. Feingold, called Alfred's law office and advised that she would take Alfred's advice and would follow his lead. Alfred made a loan from the partnership but was not able to get Feingold to

acknowledge the loan.  Later, Feingold changed her mind and demanded her money.  Alfred was later fired as her General Partner.

Feingold filed her civil complaint for conversion, breach of partnership agreement and breach of fiduciary duty.  Feingold did not plead "fraud" in her complaint.  Likewise, Feingold failed to plead nor prove all of the elements of fraud which are required by law prior to recovery of fraud damages.   Feingold prevailed on conversion and breach of fiduciary duty.  Alfred prevailed on breach of partnership agreement.  Alfred had already paid the total sum of $64,833.33 ($60,000 loan and interest of $4,833.33).  Alfred was awarded his cost of compelling arbitration as required by the partnership agreement in the amount of $7,175. See **Complaint – Exhibit 1**.

## II.     LEGAL ANALYSIS

The issue of nondischargeability is a matter of federal law governed by the terms of the Bankruptcy Code.  *Grogan v Garner*, 498 U.S. 279, 284 (1991).  In such a proceeding, the plaintiffs must "establish by a preponderance of the evidence that their claim is not dischargeable. *Id*. at 287.  Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start. *In re Hudson,* 107 F.3d 355, 356 (5th Cir. 1997).

Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation which acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. §523(a)(4).  A defalcation must involve either (i)moral turpitude, bad faith, or other immoral conduct, or (ii) in lieu of these, an intentional wrong, which includes not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent, such as where the fiduciary consciously disregards, or is willfully blind to, a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1759 (2013).  That risk "must be of such a nature and degree that, considering the nature

DEBTOR'S OPPOSITION TO LISA FEINGOLD'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT  4

and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.* at 1760.

In *Neal v. Clark, 95 U.S. 704*, this Court interpreted the term "fraud" in the Bankruptcy Code's exceptions to discharge to mean "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Id.*, at 709. The term "defalcation" should be treated similarly. Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, "defalcation" requires an intentional wrong. An intentional wrong includes not only conduct that the fiduciary knows is improper but also reckless conduct of that kind that the criminal law often treats as the equivalent.

The tort of deceit or fraud requires: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974. Feingold never pled fraud and is now, estopped from relitigating these issues at this late date.

In an adversary proceeding under Section 523(a)(4), a bankruptcy court may apply collateral estoppel "to preclude relitigation of state court findings that are relevant to dischargeability." *Whitaker v. Moronay Farms Homeowners' Ass'n (In re Whitaker)*, No. 15-40926 (2016). To have preclusive effect: 1) "the facts sought to be litigated in the second action" must have been "fully and fairly litigated in the prior action," 2) those facts must have been "essential to the judgment in the first action" and 3) the parties (in the second action) must have been cast as adversaries in the first action." *Id.* Where the state court judgment has sufficient findings of fact that support a finding of defalcation, a bankruptcy court may apply collateral estoppel and deny the discharge of the debt. *Id.* However, where the state court judgment does not have sufficient findings of fact to support defalcation, a bankruptcy court may grant discharge. A bankruptcy court presented with a state court judgment as evidence in

DEBTOR'S OPPOSITION TO LISA FEINGOLD'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT  5

support of a Section 523 exception may inquire into the true nature of the debt in order to make a dischargeability determination. *Brown v. Felsen*, 442 U.S. 127, 138.

### III.    ARGUMENT:
#### A.  DEBTOR PREVAILED ON THE BREACH OF PARTNERSHIP AGREEMENT

The Judge in the underlying arbitration ruled the Defendant/Debtor was not guilty of a breach of the partnership agreement.  However, the Judge failed to acknowledge that Defendant/Debtor is identified as a General Partner under that agreement. **This was error**. Accordingly, <u>*this fact was not fairly litigated*</u>…as the evidence presented was clear that both Alfred and Feingold were General Partners.  To have preclusive effect: 1) "the facts sought to be litigated in the second action" must have been "fully and fairly litigated in the prior action,  ..." *Whitaker v. Moronay Farms Homeowners' Ass'n (In re Whitaker)*, No. 15-40926 (2016)

#### B.  THE UNDERLYING DEBT WAS ALREADY PAID (FULLY or PARTIALLY)

An December 15, 2015, Respondent paid $64,833.33 to Claimant by check for "Repayment of $60,000 loan plus accrued interest. ***See Complaint – Exhibit 1 at paragraph 15 on page 6***.  The funds taken by the Respondent did in fact eventually earn interest higher than most bank accounts as loans.  Accordingly, the arbitrator is unable to find a breach of the Limited Partnership Agreement by Respondent. ***See Complaint -Exhibit 1 at Section D (7)***. A defalcation must involve either (i)moral turpitude, bad faith, or other immoral conduct, or (ii) in lieu of these, an intentional wrong, which includes not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent, such as where the fiduciary consciously disregards, or is willfully blind to, a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1759 (2013).  Debtor engaged in conduct that was permissible under the partnership agreement and, eventually, the funds were repaid with interest per that partnership agreement.  Moreover, "…exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start.  *In re Hudson,* 107 F.3d 355, 356 (5th Cir. 1997).

### IV. CONCLUSION

For the above reasons, Debtor respectfully requests the court to maintain the dischargeability of the excess amounts above the debt. The underlying debt has already been paid by the Debtor.

Respectfully Submitted.

Dated:  May 4, 2018                                                                      DEBTOR


                                                                                    _____/s/ MICHAEL A. ALFRED

DEBTOR'S OPPOSITION TO LISA FEINGOLD'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT  7